AO 106 (Rev. 04/010) Application for Search Warrant            AUTHORIZED AND APPROVED/DATE: _____

# UNITED STATES DISTRICT COURT
for the
__WESTERN__ DISTRICT OF __OKLAHOMA__

| | |
|---|---|
| In the Matter of the Search of )<br>*(Briefly describe the property to be search* )<br>*Or identify the person by name and address)* )<br>PROPERTY KNOWN AS: )<br>   Cellular Telephone: Silver iPhone 11 )<br>IN THE POSSESSION OF: )<br>   Drug Enforcement Administration )<br>   901 N.E. 122nd Street, Suite 210 )<br>   Oklahoma City, OK  73114 ) | Case No: __MJ-23-502-STE__ |

## APPLICATION FOR SEARCH WARRANT

I, a federal law enforcement officer or attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following property *(identify the person or describe property to be searched and give its location)*:

See Attachment A, which is attached and incorporated by reference.

Located in the Western District of Oklahoma, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, which is attached and incorporated by reference.

The basis for the search under Fed. R. Crim.P.41(c) is*(check one or more)*:
   ☒   evidence of the crime;
   ☒   contraband, fruits of crime, or other items illegally possessed;
   ☒   property designed for use, intended for use, or used in committing a crime;
   ☐   a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 846<br>21 U.S.C. § 841(a)(1) | Drug Conspiracy; and<br>Possession with Intent to Distribute Controlled Substance |

The application is based on these facts:

See attached Affidavit of Special Agent Brook J. Wilson, Drug Enforcement Agency (DEA), which is incorporated by reference herein.

   ☒   Continued on the attached sheet(s).
   ☐   Delayed notice of [No. of Days]  days *(give exact ending date if more than 30 days)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet(s).

_____
*Applicant's signature*
BROOK J. WILSON
Special Agent
DEA

Sworn to before me and signed in my presence.

Date: __Jul 6, 2023__

City and State: __Lawton, OK__ ███████

_Shon T. Erwin_
Judge's signature

SHON T. ERWIN, U.S. Magistrate Judge
Printed name and title

THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

STATE OF OKLAHOMA       )
                        )
COUNTY OF OKLAHOMA      )

AFFIDAVIT IN SUPPORT OF
AN APPLICATION FOR A SEARCH WARRANT

I, Brook J. Wilson, a Special Agent (SA) of the Drug Enforcement Administration (DEA), being duly sworn, depose and state as follows:

INTRODUCTION AND TASK FORCE OFFICER BACKGROUND

1. I am a Special Agent with the Drug Enforcement Administration (DEA) currently assigned to the Oklahoma City, Oklahoma District Office. As such, I am an investigative and law enforcement officer of the United States authorized to conduct investigations of, and to make arrests and seizures for, offenses enumerated in the Controlled Substances Act Title 21, United States Code.

2. I have been a Special Agent since October of 2014, having previously worked as a United States Border Patrol Agent from 2006 until 20014. After successfully completing the DEA training academy at Quantico, Virginia, I was assigned to the Sierra Vista Resident Office in Sierra Vista, Arizona. In October of 2019 I was transferred and currently work in the

Oklahoma City District Office in Oklahoma City, Oklahoma. I am currently assigned to the Tactical Diversion Squad.

3. Your Affiant has had conversations with and been in the company of other experienced local, state and federal law enforcement officers as well as prosecuting attorneys representing both state and federal systems concerning narcotics and dangerous drug trafficking activities and criminal violations.

4. Also, your Affiant has worked in the company of other experienced law enforcement officers and has discussed their investigative techniques and experiences with them. In the course of investigations, which I have been party to, I have become familiar with the clandestine business practices of drug traffickers and illicit drug traffickers.

5. Your Affiant has received formal training in the detection and recognition of criminal activity, including narcotic and gang related offenses. I have also been involved in numerous narcotic investigations on the state and federal level which have resulted in apprehension of persons on narcotic and narcotic related charges during my career in law enforcement.

6.	As a Special Agent, I have learned that individuals involved in drug trafficking often do the following:

A.	Traffickers in controlled substances frequently maintain, on hand, large amounts of United States currency in order to maintain and finance their ongoing illicit business;

B.	It is common practice for drug traffickers to maintain books, records, receipts, notes, ledgers, airline tickets, receipts relating to the purchase of financial instruments and/or the transportation, ordering, sale, and distribution of controlled substances; that the aforementioned books, records, receipts, notes, ledgers, etc., are maintained for extended periods of time at a place where traffickers have ready access to them;

C.	It is common practice for drug traffickers to hide contraband, proceeds of drug sales and records of drug transactions in secure locations within their residence, their vehicles, their business, or other locations which they maintain dominion and control over, for ready access and to conceal these items from law enforcement authorities;

D.	It is common for persons involved in trafficking of controlled substances to maintain evidence pertaining to their obtaining, secreting, transferring, concealing, and/or expenditure of proceeds, such as: currency, financial instruments, precious metals and gemstones, jewelry, books, records, invoices, receipts, records of real estate transactions, bank statements and related records, passbooks, money drafts, letters of credit, money orders, bank drafts, cashiers' checks, bank checks, safe deposit keys, and money wrappers;

E.	These items are maintained by the traffickers within their residences, in safes, vehicles, businesses, or other locations over which they maintain dominion and control;

F.	That experienced, well-organized, drug traffickers often utilize electronic equipment such as computers, digital pagers, telex machines, facsimile machines, cellular telephones, electronic voice mail, and telephone answering machines to generate, transfer, count,

record, and/or store drug related information or information related to drug proceeds;

G. When drug traffickers amass large amounts of proceeds from the sale of drugs, they attempt to legitimize these profits through money laundering activities;

H. To accomplish these goals, drug traffickers utilize including, but not limited to: domestic and international banks and their attendant services, securities brokers, professionals, such as attorneys and accountants, casinos, real estate, shell corporations and business fronts, and otherwise legitimate businesses which generate large quantities of currency;

I. The sale of controlled substances generates large quantities of United States currency in small denominations;

J. It is common for drug traffickers to physically handle and count the monies after receiving it in exchange for the narcotics, thereby leaving residue traces of controlled substances on the monies;

K. Drug traffickers commonly maintain addresses or telephone numbers in books or papers which reflect names, addresses, and/or telephone numbers of their associates in the trafficking organization;

L. Drug traffickers take, or cause to be taken, photographs and videos of themselves, their associates, their property and their product; that these drug traffickers usually maintain these photographs within their possession, in their residences, vehicles, businesses, or other locations which they maintain dominion and control over;

M. Money launderers register multiple businesses which deal in cash transactions in order to filter the illegal proceeds;

N. Oftentimes, these businesses are listed to drop boxes and the businesses themselves do not have a physical address;

O. Experienced, well-organized, drug traffickers and their associates often purchase and/or title their assets in fictitious names, aliases or the names of relatives, associates, or business entities, to avoid detection of these assets by law enforcement agencies; and although these assets are in other names, traffickers actually own and continue to use these assets and exercise dominion and control over them.

7. The information contained in this Affidavit is submitted for the limited purpose of establishing probable cause to secure a search warrant for a silver in color Apple Iphone 11 cellular telephone, (**TARGET DEVICE**), as described further in **Attachment A** (physical description), for evidence of violations of federal law, to wit: 21 U.S.C. § 846, Drug Conspiracy; and 21 U.S.C. § 841, Possession with Intent to Distribute Controlled Substances, as described further in **Attachment B** (description of items to be seized). The **TARGET DEVICE** is currently in the custody of the Drug Enforcement Administration at 901 NE 122nd Street, Suite 210, Oklahoma City, Oklahoma 73114 (located within the Western District of Oklahoma).

8. This Affidavit is based upon my personal investigation and upon information received from other law enforcement officers and agents and may not include all evidence or information available or of all facts known to me relative to this investigation. Rather, I have set forth only the facts that I believe are necessary to establish probable cause for the requested warrant.

## BACKGROUND REGARDING CELLULAR DEVICES

9.   Based upon my training and experience, I am aware:

A.   Individuals involved in trafficking illegal narcotics and bulk cash smuggling often use cellular phones to maintain contact with other co-conspirators, including suppliers, transporters, distributors, and purchasers of illegal narcotics and/or drug proceeds. Such cell phones and their associated memory cards commonly contain electronically stored information which constitutes evidence, fruits, and instrumentalities of drug trafficking and bulk cash smuggling offenses including, but not limited to, the phone directory and/or contacts list, calendar, text messages, e-mail messages, call logs, photographs, messaging applications, and videos.

B. Drug dealers and bulk cash smugglers often switch phones in order to avoid detection from law enforcement, and that drug dealers and bulk cash smugglers often have multiple phones that they use for different co-conspirators in order to separate their drug dealing and/or bulk cash smuggling.

C. Drug dealers keep old cellular telephones no longer in use in order to save telephone numbers of other co-conspirators, as well as other relevant information including text messages and photographs.

D. Individuals involved with sending/receiving controlled substances through the U.S. Mail will often utilize their cellular phones to access the internet in order to search for parcel tracking numbers and or to receive parcel tracking status updates identifying the arrival of suspect parcels.

E. Drug dealers and users oftentimes have stored photographs, videos and/or text and voice messages associated with the use and distribution of controlled dangerous substances and proceeds derived therefrom for their own records and/or for the purpose of furthering their distribution activity maintained on their cellular telephones and other electronic handheld devices.

F. Drug distributors/consumers and bulk cash smugglers will often use coded words and phrases and vague references in order to discuss their plans and prevent anyone from overhearing their

conversations and from recognizing that the conversations concern a criminal conspiracy.

G. Prospective drug purchasers, recipients, and/or users will often telephone the drug distributor to obtain permission to come to the distributor's location *i.e.* his business, residence, *etc.*, to obtain the drug; similarly, bulk cash smugglers will often telephone their co-conspirators to coordinate the delivery of the bulk cash proceeds to be smuggled.

H. Drug distributors will often have "sales people" bring prospective drug purchasers to him or her and these sales people will receive payment in cash, or in kind (a quantity of drugs), for bringing drug users/buyers to the distributor. These "sales people" often use the telephone to contact the distributor by voice or text message to arrange these meetings.

## PROBABLE CAUSE

10. On January 26, 2023, The Oklahoma Highway Patrol (OHP) conducted an vehicle stop of a black in color, 2023 Toyota Camry with California license plate 8XGY203, at approximately mile marker 111 on Interstate 40. This location is within Canadian County, Oklahoma within the Western District of Oklahoma. This vehicle stop was conducted subsequent to Trooper Brady Webb establishing that the vehicle had been speeding. Trooper Webb identified Frank SCOTT as the sole occupant of the vehicle. During the execution of this stop, Tooper Webb noticed an odor of raw marijuana emanating from inside the vehicle. When questioned about the raw marijuana odor, SCOTT stated that when he had rented the vehicle, that

7

he had found marijuana inside the vehicle and that he had returned it to the rental company.

11. Based on this conversation and the raw marijuana odor, Trooper Webb conducted a probable cause search of the vehicle. In the trunk of the vehicle, Trooper Webb located 3 boxes wrapped in gift wrapping, along with two cardboard boxes that were not wrapped, but were taped shut. A search of the two boxes that had been taped shut revealed two vacuum sealed bags containing approximately 10.5 pounds or 4,762 grams of suspected methamphetamine. SCOTT was placed under arrest for aggravated trafficking of methamphetamine and transported to the OHP Troop SO garage. Additionally, Toopers seized 3 cellular phones, including the **TARGET DEVICE** from the vehicle and transported them with SCOTT. The suspected methamphetamine was eventually submitted for laboratory testing where it tested positive for methamphetamine.

12. Upon arrival at the Troop SO garage, your affiant arrived at the location to conduct an interview with SCOTT. Your affiant read SCOTT his *Miranda Rights* and SCOTT responded that he would speak with your affiant. SCOTT stated that he was from California and that he was traveling to see family in Little Rock, Arkansas and was planning on delivering soaps

for the homeless. SCOTT stated that he had been previously convicted on narcotics charges. SCOTT stated that he was given the box containing the methamphetamine by a subject who's phone number SCOTT did not have. SCOTT stated that he did not know that the box contained methamphetamine and that he had randomly encountered the subject that gave him the box for an unknown reason. SCOTT identified 3 cellular telephones, including the **TARGET DEVICE,** seized by OHP during the traffic stop, as belonging to him.

### ELECTRONIC STORAGE AND FORENSIC ANALYSIS

13.  Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

   a. *Forensic evidence.* This application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the device was used, the purpose of its use, who used it, and when.

   b. *Nature of examination.* The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

    c.    *Manner of execution.* Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## MANNER OF SEARCH

14. I would note that based upon his aforementioned training and experience, relevant and/or incriminating text messages, videos, and photographs oftentimes are comingled on cellular telephones and electronic handheld devices with text messages, videos, and photographs which do not have an evidentiary value. However, criminals engaged in communications furthering the nature of their criminal enterprise, in particular with investigations involving the use/distribution of controlled dangerous substances, many of these communications will involve cryptic/guarded and or otherwise coded jargon which is oftentimes utilized to conceal the nature of their illegal communication. As a result, a limited review of the content of each communication will be necessary to determine the nature of the communication and whether it is relevant to that information particularly set forth above within this Affidavit.

15. Searching the electronic handheld device for the evidence described above may require a range of data analysis techniques. In some

cases, it is possible for agents to conduct carefully targeted searches that can locate evidence without requiring a time-consuming manual search through unrelated materials that may be commingled with criminal evidence. For example, agents may be able to execute a "keyword" search that searches through the files stored in a computer for special words that are likely to appear only in the materials covered by a warrant. Similarly, officers may be able to locate the materials covered in the warrant by looking for particular directory or file names. In other cases, however, such techniques may not yield the evidence described in the warrant. Criminals can mislabel or hide files to evade detection; or take other steps designed to frustrate law enforcement searches for information. These steps may require officers to conduct more extensive searches, such as scanning areas of the device's memory not allocated to listed files, or opening every file and scanning its contents briefly to determine whether it falls within the scope of the warrant. In light of these difficulties, your affiant requests permission to use whatever data analysis techniques necessary and available to locate and retrieve the evidence described above.

## AUTHORIZATION REQUESTS

16. Based on the above information, there is probable cause to believe that violations of 21 U.S.C. §§ 841(a)(1) and 846, have occurred, and that evidence, fruits, and instrumentalities of these offenses are located on the **TARGET DEVICE**, which was found in the immediate area of illicit drugs, and of SCOTT himself. Therefore, I respectfully request that this Court issue a search warrant for the **TARGET DEVICE**, described in **Attachment A**, authorizing the seizure of the items described in **Attachment B**.

_____
Brook Wilson
Special Agent, DEA

Sworn and subscribed to before me this 6th day of July, 2023.

_____
SHON T. ERWIN
United States Magistrate Judge

# ATTACHMENT A

The **TARGET DEVICE** is described as a silver in color Iphone 11 cellular telephone with a black wallet phone case. The **TARGET DEVICE** is currently in the custody of the Drug Enforcement Administration at 901 NE 122nd Street, Suite 210, Oklahoma City, Oklahoma 73114.



# ATTACHMENT B

All records on the **TARGET DEVICE** described in **Attachment A** that relate to violations of law, including 21 U.S.C. § 846 (Drug Conspiracy) and 21 U.S.C. § 841(a)(1) (Possession with Intent to Distribute Controlled Substances). The items to be seized include:

a. Stored communications which are voice recordings/messages, text messages (SMS) and multimedia messages (MMS), emails and attachments, read or unread which relate to and provide evidence of criminal activity described in this affidavit;

b. Stored communications voice or text based located within downloadable messaging applications or social media applications;

c. All internet usage history that may reveal evidence of drug trafficking or bulk cash smuggling, such as package tracking, internet mail communications, electronic payment receipts, etc.;

d. Call logs/histories depicting incoming/outgoing numbers dialed to and from the **TARGET DEVICE** which relate to and provide evidence of the above described criminal activity and further described in this affidavit;

e. Internet World Wide Web (WWW) browser files including browser history, browser cache, browser favorites, auto-complete form history and stored passwords;

f. Contacts, address books and calendars, customer lists and related identifying information such as names, nicknames and/or monikers within the above described telephone device which relate to and provide evidence of the above described criminal activity and further described in this affidavit;

g. Photographs, audio/video recordings with their associated metadata relating to and which provide evidence of the above described criminal activity and further described in this affidavit;

h. Stored location information including global positioning system (GPS) data indicating coordinates, way points, tracks and locations in which the phone has traveled; and,

i. Data and user records/information, password(s) that would assist in identifying/confirming the owner(s)/user(s) of the above referenced property to be searched.